EL PUEBLO, DEMANDANTE Y APELADO, *v.* PADILLA, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en causa por delito contra la justicia pública.

No. 787.—Resuelto en junio 24, 1916.

DELITO CONTRA LA JUSTICIA PÚBLICA—JUSTICIA PÚBLICA—MANDAMIENTO DE ARRESTO — FALTA DE CAUSA PROBABLE — ARRESTO — INSUFICIENCIA DE LA PRUEBA.—Cuando en una causa por infracción del artículo 148 del Código Penal, o sea, por haber conseguido el acusado maliciosamente y sin causa probable el libramiento y ejecución de un mandamiento de arresto contra el denunciante, no consta que el mandamiento fuera debidamente ejecutado por no haberse efectuado el arresto del denunciante, no existe base suficiente para sostener una sentencia condenatoria.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Leopoldo Feliú.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El artículo 148 del Código Penal prescribe lo siguiente:

"Toda persona que maliciosamente y sin causa probable, consiguiere el libramiento y la ejecución de una orden de allanamiento o de arresto, será culpable de *misdemeanor.*"

El acusado y apelante fué declarado culpable del delito que de tal modo se define, bajo una acusación en la que se alegan los hechos en la forma siguiente:

"El citado Armando Padilla, allá en o por uno de los días del mes de agosto de 1914, y en la ciudad y municipio de Mayagüez, territorio de la corte de distrito del distrito judicial del mismo nombre, ilegal, voluntaria y maliciosamente y sin causa probable, y por virtud de una denuncia jurada, relacionada con la aplicación de las Leyes Electorales de Puerto Rico, obtuvo del honorable juez municipal de Mayagüez, Sr. Bryan, el arresto de Juan Carlo, el que tuvo que prestar una fianza de doscientos dollars, para su libertad provisional."

La única declaración respecto a la forma de hacer el supuesto arresto, es la del denunciante Juan Carlo, que dice:

"Me llamo Juan Carlo, soy natural de Cabo Rojo y vecino de Mayagüez, en cuya ciudad resido desde el año 1892, en el barrio de la Marina Septentrional, en la que he venido desde antonces ejerciendo mi profesión, que es la de marino. Tengo familia y soy casado. Vivo con mi familia.

"La primera vez fuí denunciado por Armando Padilla, a quien no conozco, y me denunció éste por doble inscripción, porque decía que constaba yo en las listas electorales inscrito dos veces: La primera vez que me he inscrito fué ahora en julio de 1914, no recordando el número de mi inscripción, ni tampoco el día. Conozco uno de los agentes de inscripción ante quien comparecí y me inscribí, y ese es el Sr. Angel González. Me inscribí en el precinto del pueblo.

"Con motivo de esa denuncia me reclamaron, me fiaron y estuve ante el Sr. Fiscal a presentar una denuncia contra Armando Padilla. Cuando la denuncia esa estuve a tiempo, cuando me citaron. Fuí llamado por un policía con una orden de arresto y me presenté donde el Fiscal con una denuncia contra Armando Padilla y los fiadores, porque me encontré fiado. Creo que de mis fiadores uno fué Domenech; no recuerdo quiénes fueron los otros. Estuve detenido el momento ese nada más, pocos minutos. No conozco al policía que me fué a buscar, ni hablé con él. Me dijo que me presentara, que estaba

denunciado ante la corte y yo estuve ante el Sr. Fiscal; después de ahí me fuí para casa. Eso fué la primera vez. La fianza se dió ante el Sr. Fiscal. Me refiero a la fianza que presentó por mí el Sr. Domenech y los otros que no conozco, como tampoco conozco al funcionario que recibió la fianza. Repreguntado por la defensa declaró como sigue: En julio, no recuerdo qué día fué que estuve arrestado. Esto fué en julio o agosto. · Lo que me hicieron fué que me reclamaron para que compareciera a una denuncia que me hacía Armando Padilla por doble inscripción, diciéndoseme que compareciera ante el Sr. Fiscal o ante el Sr. Juez. Ese recado me lo dió el policía y es natural que cuando vienen a buscar a uno * * *. No recuerdo si el policía me enseñó o no papel alguno. Me arrestó de día. No me trajo preso, yo vine y me dijo que me presentara, que estaba denunciado por Armando Padilla, y que me presentara ante el Sr. Juez o ante el Sr. Fiscal, no recuerdo ante quién de los dos. Yo comparecí ante el Sr. Fiscal y no fuí ante el juez municipal porque estaba fiado. ˙La primera vez no fuí ante el juez municipal. Cuando el policía fué a decirme que me presentara, que Armando Padilla me había denunciado, me dijo que me presentara al juez municipal y yo estuve ante el Sr. Fiscal. Me dijo que me presentara ante el juzgado. Vuelvo y digo que me dijo que me presentara y yo donde estuve fué donde el Sr. Fiscal, con la denuncia contra Armando Padilla.

"En este asunto lo que he hecho es venir donde el Sr. Fiscal a denunciar a Armando Padilla que fué el que me denunció a mí. No he estado en la corte municipal. Cuando me reclamó el policía que me presentara, me presenté ante el Sr. Fiscal a denunciar a Armando Padilla por la denuncia que se me hizo por doble inscripción. En relación con esta denuncia que él me hizo no he estado en la corte municipal. A mí me avisaron, no me trajeron detenido, y cuando vine a la corte ya estaba fiado. El policía no me trajo preso, ni estuve tampoco detenido tiempo alguno en la corte municipal. Lo que hice fué llegar a la corte y al llegar me dijeron: 'ya Ud. esta fiado, puede irse.' No me fijé en el número del policía, y éste no puede decir que es verdad que me trajo arrestado. Tengo 38 años. Me inscribí este año por primera vez, la única vez y si no estuviera seguro de eso no lo diría."

La admisión del supuesto "diligenciamiento" que aparece al dorso de la orden de arresto fué denegada por virtud de la objeción hecha por la defensa después que la persona que lo hizo había dado los siguientes informes en cuanto

a él así como de la acción que tomó en relación con el particular:

"Me llamo Rafael Cohen, en el mes de agosto no tenía cargo público alguno, y desempeñaba un puesto auxiliar en la oficina de la corte municipal. No conozco a Juan Carlo. No recuerdo que en el mes de agosto de este año recibiera órdenes algunas del secretario, ni del márshal de la corte municipal, en relación con infracciones o delitos electorales. No recuerdo haber recibido orden alguna de arresto contra Juan Carlo, pero sí está diligenciada por mí, sí.

"El Fiscal entonces muestra al testigo la constancia del diligenciamiento de la orden de arresto de Juan Carlo, que aparece al dorso de la misma. El testigo la identifica, y sigue declarando como sigue:

"La firma que aparece ahí es la mía y eso que está ahí escrito, lo escribí yo. Esto dice: 'Devuelto por haberse presentado a prestar fianza el acusado expresado al respaldo.'

"El acusado era Juan Carlo, y yo cumplimenté esa orden. No recuerdo si me entregó esa orden el márshal o el secretario. Eso que está escrito por mí fué lo que sucedió. El se presentó a la corte y prestó fianza; pero no recuerdo el individuo.

"Repreguntado por la defensa, contestó:

"En agosto yo no desempeñaba cargo alguno en Mayagüez, auxiliaba al márshal de la corte municipal a hacer sus trabajos. Estaba nombrado para ese cargo por el márshal. El me tenía por su cuenta. No me había nombrado el Attorney General, ni el Gobernador sub-márshal de la Corte Municipal de Mayagüez. En la diligencia de la orden de arresto pongo sub-márshal debajo de mi nombre porque tengo el cargo de sub-márshal, lo que tiene es que el Gobierno no me puede pagar los servicios. No tengo nombramiento de sub-márshal, ni carta autorizando al márshal para que me nombre, lo único que hay es que el Gobierno no me paga el servicio de sub-márshal.

"Vuelto a examinar por el Fiscal, declaró:

"Yo era sub-márshal de la Corte Municipal de Mayagüez. Estuve cobrando mi sueldo hasta junio de este año, y desde el primero de julio no cobro, en virtud de que al hacer el nuevo presupuesto, no aparece la partida de sub-márshal. El márshal de la corte municipal me recomendó para el cargo de sub-márshal. Funciono como sub-márshal porque algunas veces no tengo nada que hacer, y el márshal me gratifica, me ayuda de su sueldo y no tengo inconveniente en auxiliarle a él.

"Vuelto a examinar por la defensa, declaró:

"Cuando hago un emplazamiento en un caso civil, al devolverlo diligenciado a la oficina del secretario de la corte municipal, hago un *affidavit.*"

Los artículos 114 al 116, inclusives, el mencionado en segundo lugar en tanto es pertinente, y el artículo 121 del Código de Enjuiciamiento Criminal, Título V, "Arresto, quién lo hará y cómo se llevará a cabo," disponen lo siguiente:

"Artículo 114.—Un arresto significa poner a una persona bajo custodia en los casos y del modo que la ley autoriza.

"Artículo 115.—Se hace el arresto por medio de la restricción efectiva de la libertad de la persona del acusado, o por estar sometido dicho acusado a la custodia de un oficial. El acusado no habrá de estar sujeto a más restricciones que las necesarias para su arresto y detención.

"Artículo 116.—Un oficial de orden público puede hacer un arresto en cumplimiento de una orden que le haya sido entregada con tal fin o puede, sin una orden de arresto, detener a una persona:

1. Por un delito público cometido o que se ha intentado cometer, en su presencia; * * *.

"Artículo 121.—La persona que haga un arresto deberá informar a la persona que ha de ser arrestada de la intención de arrestarle, de la causa del arresto y de la autoridad que se tenga para hacerlo, excepto cuando la persona que ha de ser arrestada esté en aquel momento empeñada en la comisión de un delito o en una tentativa para cometerlo, o sea perseguida inmediatamente después de la perpetración del mismo, o después de su fuga de una prisión." Véase también 2 R. C. L. 445; 446; 5 C. J. 385-387.

Admitiendo para los fines de esta opinión la suficiencia de la acusación y la falta de causa probable para la denuncia jurada que en dicha acusación se menciona, no creemos que los hechos probados demuestran una ejecución de la orden de arresto. La orden misma no ha sido sometida a nuestra consideración. El diligenciamiento de dicha orden nunca fué admitido como prueba, pero si hubiera sido admitido, suponiendo que la lectura que de él hizo Cohen era correcta, no hubiera demostrado ni siquiera que se trató de ejecu-

tarla, sino más bien una explicación de la razón por la cual
fué devuelta sin ser ejecutada. El policía mencionado por
Carlo no declaró. No existe prueba de que la orden le hu-
biera sido entregada al policía o de que la hubiera visto
en alguna ocasión, o supiera que existía. De los autos no
aparece si la fianza, prestada sin consultar al principal que
en ella se menciona, fué dada, y el diligenciamiento que se
hizo de la ejecución puesto al dorso de la misma antes o
después de la conversación que tuvo lugar entre Carlo y el
policía. Es cierto que Carlo hace una referencia accidental
a una orden de arresto, pero toda su declaración así como
la de Cohen, tiende más bien a negar la idea de que hubiera
algún mandamiento en poder del oficial, de ninguna inten-
ción de su parte de verificar un arresto y de algún enten-
dimiento por parte de Carlo de que siquiera estuviera él
bajo la custodia sobreentendida del policía después del ''re-
cado'' que le ''dió'' de que había sido presentada una denun-
cia. Ni siquiera consta que Carlo fué a la corte municipal
con el fin de prestar fianza, sino más bien que fué donde el
Fiscal para presentar una denuncia contra Padilla y los fia-
dores que voluntariamente se ofrecieron, quienes sin el cono-
cimiento o consentimiento de su principal se dieron tal prisa
para evitarle la molestia e inconveniente de tener que com-
parecer personalmente.

Puede ser que el policía tuviera la orden en su poder a
la fecha de su conversación con Carlo y que tratara de veri-
ficar un arresto y que Carlo que estaba arrestado, se some-
tió voluntariamente y fué a la corte con el fin de obtener su
libertad bajo fianza; pero éstas son cuestiones peculiarmente
susceptibles de prueba clara y concluyente fuera de toda
duda razonable, de ser verdaderas, y la prueba aducida es
enteramente débil para que pueda basarse en ella una sen-
tencia condenatoria en un caso criminal.

En vista de la conclusión a que hemos llegado respecto
a este particular, no es preciso que consideremos en sus por-
menores los otros nueve señalamientos de error que han sido

alegados y discutidos con alguna extensión en el alegato del apelante.

La sentencia apelada debe ser revocada.

*Revocada la sentencia apelada y absuelto el acusado.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.